# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE ROCKY NICKLAS,<br><br>    Plaintiff,<br><br>v.<br><br>W. KOKOR and MS. MATA,<br><br>    Defendants. | Case No. 1:18-cv-00119-LJO-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR TERMINATING SANCTIONS BE DENIED<br><br>(ECF No. 61)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS<br><br>ORDER DENYING PLAINTIFF'S REQUEST FOR APPOINTMENT OF PRO BONO COUNSEL<br><br>(ECF No. 64, at p. 11)<br><br>ORDER DIRECTING CLERK TO DOCKET THE TRANSCRIPT OF PLAINTIFF'S DEPOSITION |

Steve Rocky Nicklas ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. Now before the Court is Defendants' motion for terminating sanctions on the grounds that Plaintiff failed "to comply with a court order and participate in a deposition." (ECF No. 61, at p. 1).

## I.  Background

On October 24, 2019, Defendants Kokor and Mata filed a motion for terminating

1

sanctions. (ECF No. 61). Defendants claim that "inmate-Plaintiff Steve Nicklas refused to answer any questions after a little over one hour of deposition testimony, and left Defendants' deposition. Plaintiff unequivocally stated that he would not answer any more questions unless he spoke to the judge. Then, when given the opportunity to speak with the judge, he decided he did not want to participate." (ECF No. 61-1, at p. 1-2) (internal footnote and citations omitted).

Plaintiff opposes Defendants' motion. (ECF No. 64). Plaintiff states that he willingly attended the deposition and answered questions for over sixty minutes. Plaintiff states that "Mr. Lee let his emotions cloud his legal mind, and resorted to unethical and incompetent abusive interrogation tactics. . . ." (ECF No. 64, at p. 2). Plaintiff claims that Mr. Lee raised his voice, spoke quickly, and repeated questions that Plaintiff had already answered. Plaintiff claims that prison officials should have provided him with legal assistance at the deposition. Plaintiff claims that he requested to speak with the Court, but Mr. Lee was not able to reach the Court.

Defendants filed a reply. (ECF No. 65). Defendants claim that defense counsel did not badger the witness, that Plaintiff was frustrated about not having a legal representative, "refused to state any objection justifying his unwillingness to answer questions," and "declined to speak with the judge." (Id. at 2).

## II. Legal Standards

The Ninth Circuit has provided the following guidance in evaluating whether terminating sanctions are appropriate:

> A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe. . . . Only "willfulness, bad faith, and fault" justify terminating sanctions.
>
> We have constructed a five-part test, with three subparts to the fifth part, to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. This "test" is not mechanical. It provides the district court with a way to think about what to do,

2

> not a set of conditions precedent for sanctions or a script that the district court must follow:
>
>> Like most elaborate multifactor tests, our test has not been what it appears to be, a mechanical means of determining what discovery sanction is just. The list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything, and not a script for making what the district judge does appeal-proof.

Connecticut General Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007) (footnotes omitted).

### III.  Plaintiff's Deposition

At the Court's request, and pursuant to Local Rule 133(j), Defendants lodged the transcript of Plaintiff's deposition. The Court has reviewed the transcript in full, and makes the following observations relevant to the issue of terminating sanctions.[1]

Plaintiff appeared as scheduled at the deposition and answered many questions without incident. This testimony included a detailed description of the underlying incident. Plaintiff answered all questions about that examination. Indeed, he went through those details multiple times in response to questions by defense counsel. Plaintiff also answered all questions about the aftermath, including his allegations that Defendant Kokor rescinded his medical accommodations following the exam.

Later in the deposition, defense counsel began a line of questioning where he read medical records to Plaintiff and asked Plaintiff to identify any inaccuracies in those notes. Defense counsel prefaces this portion of questioning by stating "since you claim you can't read. I'll read it for you." Transcript of Plaintiff's Deposition ("Tr.") at 48:5-7. Some of these medical notes were quite lengthy, lasting multiple deposition pages. At one point, there is a notation "Reporter Admonishment to Speak Slowly." Tr. at 48:16. After each medical record, defense counsel asks Plaintiff to confirm the information in the record, by asking questions such as "Does any of that ring a bell from May 5th, 2017, Mr. Nicklas?" See, e.g., Tr. at 48-50.

---

[1] As the Court relies on the transcript of Plaintiff's deposition in issuing these findings and recommendations on Defendants' motion for terminating sanctions, the transcript shall become part of the record. Accordingly, the Clerk of Court is directed to docket, in a separate docket entry, a copy of the transcript of Plaintiff's deposition.

3

At pages 59-60 of the transcript, defense counsel reads from one particular medical record, dated February 9, 2018, after which the following testimony takes place:

Q: Okay. Anything from the report that seems to be inaccurate?

A: He did not explain none of that to me.

Q: That's not my question. Anything that appears to be inaccurate from your recollection of the appointment?

A: All I know with all due respect, I explained to Dr. Segal what happened, and that's it.

Q: But you have no reason to doubt any of the other notes that he's made?

A: With all due respect, I'm not going to respond to that.

Q: On what ground?

A: Grounds because they're fabricating a bunch of lies. To me, they're fabricating a bunch of lies there.

Q: Okay. Are you claiming a privilege of some sort?

A: A privilege?

Q: I'm trying to understand the basis of your objection.

A: My objection? Some things I'm not even understanding what you're saying because you're going a hundred miles an hour. You're reading stuff that I don't - - I'm not sure. All I know what happened that day. I'm here to explain to you my situation that happened that day, but you're going way out of the way, way out yonder. I cannot give you the right correct time and the right correct date. It's been a long time.

. . .

Q: Okay. So is there anything from Dr. Segal's treatment visit on February 9, 2018 that you - -

A: Can you read that again, please, if you don't mind?

Q: Sure. "History: He was last seen by me in August 2017 complaining of back pain with urinary and bowel incontinence."

A: Is that the last meeting? Sorry to interrupt. Is that the last meeting that I had with him?

4

Q: I'm not here to answer questions for you.

A: Well, I'm not here to respond to them.

Q: Okay. Then we can get the judge on the line.

A: We can get the judge and have the judge - - because I want to submit something to the judge too. You're not letting go. You're telling me things that - - you're telling me things that - - I don't have no one here to assist me. I have a zero tape [sic] score. No one to - -at all here.

Q: It's going to be attached to the transcript as an exhibit.

A: Yeah. But with all due respect, I have no one here.

Q: You don't have an attorney, sir. I don't know what to tell you.

A: The judge should hired somebody here, or let the inmate come in here and assist me.

Q: You can argue with the judge about that.

A: Well, get the judge on the line then.

Q: Okay.

A: We can do that.

Tr. at 60:15-63:11.

After some additional questions, defense counsel attempts to reach the Court and appears to leave a message with the Courtroom Deputy. Then, the transcript indicates the following:

> Mr. Lee: So back on. It is now 11:55. Mr. Nicklas has refused to answer any further questions and is walking out of the deposition. I have notified him of the Court's order indicates that if he fails to participate at the deposition his case may be subject to dismissal. Mr. Nicklas, do you have anything further to say?
>
> The Witness: Yes, I do. I cannot read or write, and this man is saying some stuff that I do not understand, and I would like to have somebody here to help assist me because I don't have no one to assist me and I'm asking please. Thank you.

Tr. at 66:8-20.

Defense counsel then concludes the deposition and states that he will file a motion for terminating sanctions. Then a discussion is held off the record. The transcript concludes as

follows:

> Mr. Lee: Mr. Nicklas, would you like to be present for the phone call to Ms. Rooney and chambers per Judge Grosjean as I note your departure from the deposition.
>
> The Witness: I would like to speak to her at another time, another date, without you here. Thank you.
>
> Mr. Lee: Thank you.

Tr. at 67:5-11.

Despite counsel's attempts, the participants at the deposition never spoke with the Court. It is not clear whether anyone from the deposition reached a person at the Court's chambers during the deposition.

**IV.  Analysis**

The Court first looks to whether Plaintiff acted with the requisite "willfulness, bad faith, and fault" to justify terminating sanctions.

It is true that Plaintiff left his deposition before questioning had concluded. Rule 30(d) of the Federal Rules of Civil Procedure states that, "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). Departing before this time period without cause is arguably a willful violation of the rules.

It is also true that a deponent is not legally required to continue a deposition under all circumstances. The Federal Rules of Civil Procedure also provide that, "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. . . . If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order." Fed. R. Civ. P. 30(d)(3)(A).

Here, Plaintiff did not make such a formal motion. Plaintiff is not represented by counsel, has no legal training, uses the assistance of inmates for his filings, and likely is not aware of that rule. However, Plaintiff's comments during the deposition demonstrate that he believed he was leaving because he objected to defense counsel's questions for reasons that could fall within such

6

a rule.

Specifically, the deposition breaks down during the following questioning:

Q: Okay. So is there anything from Dr. Segal's treatment visit on February 9, 2018 that you - -

A: Can you read that again, please, if you don't mind?

Q: Sure. "History: He was last seen by me in August 2017 complaining of back pain with urinary and bowel incontinence."

A: Is that the last meeting? Sorry to interrupt. Is that the last meeting that I had with him?

Q: I'm not here to answer questions for you.

A: Well, I'm not here to respond to them.

Q: Okay. Then we can get the judge on the line.

Tr. at 62:7-18.

The Court finds that defense counsel's questioning in this passage was improper. Defense counsel was referring to a lengthy treatment note, which appears to have taken defense counsel approximately two minutes to read according to the time stamps on the transcript. Then the parties engaged in about two minutes of discussion before turning back to the questioning cited above. Plaintiff then asks a question about whether the note in question was from the last meeting that Plaintiff had with the doctor. This is a reasonable clarification to seek when discussing the accuracy of a medical note. Defense counsel's response that "I'm not here to answer questions for you" is not helpful and arguably oppressive under the circumstances.

The deposition quickly deteriorates from there. Defense counsel makes no attempt to move to another line of questioning, to or provide clarification about the note in question. Defense counsel does not suggest that Plaintiff put an objection on the record for resolution at another time. Shortly thereafter, when Plaintiff states "with all due respect, I have no one here," defense counsel responds "You don't have an attorney, sir. I don't know what to tell you." Tr. at 63:2-5. This comment is flippant and disrespectful under the circumstances and appears to have contributed to the termination of the deposition.

7

Thus, the Court finds that Plaintiff's termination of the deposition was not done in bad faith.

As for the remaining factors, the Court finds that the extreme sanction of terminating sanctions is not warranted here. Although the public has an interest in resolution of the litigation, the case is moving forward relatively efficiently and an additional deposition, if defense chooses to take one, would not unduly delay the case. Plaintiff has also not impeded the Court's need to manage its docket. Regarding prejudice, the deposition already covered the underlying incident multiple times. While Defendants argue that additional questioning on issues such as damages is needed, Defendants may resume the deposition if they choose to do so. Moreover, it is almost certain that Plaintiff will be unable to take any depositions in this case, so Defendants would not be unduly prejudiced in relation to Plaintiff if they forgo additional deposition testimony. Additionally, public policy favors disposition of the case on its merits. Although monetary sanctions are not available given Plaintiff's indigent status, the Court finds this factor is not dispositive in light of all the circumstances.

As to Plaintiff's request for sanctions, which is included in Plaintiff's opposition to Defendants' motion for terminating sanctions, it will be denied. The Court has reviewed the transcript and Defendants' motion for terminating sanctions, and it does not appear that defense counsel's conduct or the representations made in the motion warrant sanctioning defense counsel or Defendants.

**V.      Plaintiff's Request for Appointment of Pro Bono Counsel**

Plaintiff included a request for appointment of pro bono counsel in his opposition to Defendants' motion for terminating sanctions. (ECF No. 64, at p. 11). Plaintiff asks for appointment of pro bono counsel because he suffers from disabilities that hinder his ability to read and write, and further disabilities to his ability to walk.

Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), withdrawn in part on other grounds, 154 F.3d 952 (9th Cir. 1998), and the Court cannot require an attorney to represent Plaintiff pursuant to 28

U.S.C. § 1915(e)(1).  Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298, 109 S.Ct. 1814, 1816 (1989).  However, in certain exceptional circumstances the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1).  Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases.  In determining whether "exceptional circumstances exist, a district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. (citation and internal quotation marks omitted).

The Court will not order appointment of pro bono counsel at this time.  The Court has reviewed the record in this case, and at this time the Court is unable to make a determination that Plaintiff is likely to succeed on the merits of his claims.  Moreover, with the assistance Plaintiff is currently receiving, it appears that Plaintiff can adequately articulate his claims.

**VI.  Recommendations and Order**

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' Motion for Terminating Sanctions (ECF No. 61) be DENIED; and
2. Defendants be allowed to continue Plaintiff's deposition at another date if they choose to do so, with the following procedures in place:
    a. Plaintiff must remain in the deposition until the conclusion and answer questions to the best of his ability.
    b. If Plaintiff believes that a question is so objectionable as to not require an answer, he should explain why he is not answering the question.  In that case, defense counsel should attempt to address Plaintiff's concern, or move onto another question.
    c. Defendants may move to compel an answer to a question either by contacting the Court during the deposition or filing a motion to compel after the deposition.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that:

1. Plaintiff's request for sanctions (ECF No. 64, p. 10) is DENIED;
2. Plaintiff's request for appointment of pro bono counsel (ECF No. 64, at p. 11) is DENIED, without prejudice.

IT IS SO ORDERED.

Dated: **November 20, 2019**     /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE